The Honorable Lauren King

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, v. CAMERON JOHN WAGENIUS, Defendant. | NO. CR24-232 LK and NO. CR25-142 LK **UNITED STATES' SENTENCING MEMORANDUM** |

While on active duty in the U.S. Army, Cameron Wagenius spent over 18 months engaged in cybercrime. He developed a hacking tool that he and his co-conspirators used to access and attempt to access hundreds of protected computers worldwide and steal sensitive personal and financial information belonging to real persons, attempted to extort multiple U.S. and foreign telecommunications companies to prevent publication (or in some instances further publication) of such stolen information, sold stolen information, and published stolen information in retaliation for U.S. law enforcement's arrest of another cybercriminal. While Wagenius was not particularly financially successful as a cybercriminal, he both intended to and caused significant harm to numerous individual victims, U.S. companies, and the U.S. government.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

In March and July 2025, respectively, Wagenius pleaded guilty to all counts associated with these offenses, as described further below. Recognizing the seriousness and duration of Wagenius's criminal conduct, the United States respectfully requests that this Court impose a total custodial sentence of 70 months followed by three years of supervised release, to include electronic device monitoring; order restitution in the amount of $294,978.38; and impose a mandatory special assessment of $500.

## I. FACTUAL BACKGROUND

### A. The Charged Offenses

Wagenius is being sentenced in two cases. In the first case, Case No. CR24-232 LK, Wagenius made two online posts that disclosed confidential non-content call detail records belonging to a government official and family members of another former official and threatened to release additional confidential records unless paid a ransom. *See generally* PSR ¶¶ 2-3 & 15-18; Ex. 1, Declaration of Special Agent Sean Huseby (hereinafter, "Huseby Decl."), ¶¶ 3-5. The text of one of these online posts suggested that Wagenius was motivated by a desire to retaliate for the then-recent arrest of another cybercriminal. *See* Huseby Decl. ¶ 4. Wagenius also attempted to privately extort the U.S. company from which these records were stolen. *See* PSR ¶ 17; Huseby Decl. ¶ 6.

The second case, to which Wagenius pleaded guilty in case No. CR25-142 LK, was much broader. Beginning no later than April 2023 and continuing through his arrest on December 18, 2024, Wagenius conspired with others to devise a scheme to defraud at least 10 victim organizations by obtaining login credentials for the organizations' protected computer systems without authorization, gaining unlawful access to these protected computer networks, stealing sensitive information, threatening to leak the stolen data unless the victims paid ransoms, and offering to sell and selling the stolen data online. *See* Plea Agreement ¶ 10(a); PSR ¶ 23. Through this scheme, Wagenius and his co-conspirators gained unlawful access to hundreds of thousands of sensitive business and customer records, including call and text history records, telecommunication


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

identifying information, and other personally identifiable information. *Id.* In addition to the telecommunication company victim discussed above, Wagenius also attempted to extort at least additional two victims of this scheme for at least $700,000 in 2024—totaling over $1 million in attempted extortions. *See* Huseby Decl. ¶ 7; *see also* PSR ¶ 24 & Plea Agreement ¶ 10(a), (b).

As part of this scheme, beginning no later than April 2023, Wagenius participated in Telegram group chats in which he discussed hacking and fraud with other co-conspirators. *See* Plea Agreement ¶¶ 10.a, 10.d, PSR ¶¶ 24-25. With others, he also developed a "bruteforcing" tool called "SSH Brute," which was a software application the conspirators used to attempt to access hundreds of victim servers without authorization by guessing combinations of usernames and passwords. *See* Plea Agreement ¶¶ 10.c-d. Wagenius and his conspirators also used Telegram to circulate the stolen credentials. *See* PSR ¶ 25. He also made malicious use of a commercial artificial intelligence ("AI") tool, as well as the assistance of co-conspirators, in these hacking activities. *See* Huseby Decl. ¶ 8.

In one instance involving a foreign telecommunications company (Victim-1 in the indictment), Wagenius and conspirators obtained initial access to the victim's network using the SSH Brute tool. Huseby Decl. ¶ 9. Then, conspirators used this access to move into other servers on the network, ultimately exfiltrating gigabytes of sensitive data. Huseby Decl. ¶ 9. Wagenius again offered this data for sale online. *Id.* He also wrote and sent a ransom note "demanding a ransom payment of 500,000 USD in the form of crypto currency" and threatening to leak the company's data if the company failed to pay. Huseby Decl. ¶ 10.

In another instance, Wagenius accessed the protected computer systems of Victim-3, a technology company located in the United States and stole information pertaining to thousands of Victim-2's customers, including telephone numbers belonging to real people who were Victim-2's customers. Wagenius subsequently attempted to extort



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Victim-2, a U.S.-based telecommunications company, in the amount of $200,000 to avoid publication of its data. *See* PSR ¶¶ 20, 30; Huseby Decl. ¶ 11.

Finally, while on active duty in the U.S. Army and possessing a security clearance, he also used encrypted communications in attempts to sell stolen data to what he believed was another country's intelligence service. *See* PSR ¶ 21. He used an end-to-end encrypted email service in at least eight communications. *Id*. In these attempts to sell stolen data to another country's military intelligence service, Wagenius specifically highlighted that the information was sensitive enough that it could be useful to "find high ranking government, military officials" of a foreign nation. *Id.*

In addition to seeking financial rewards through the offenses outlined in Case Nos. CR24-232 LK and CR25-142 LK, Wagenius sought to build his reputation among cybercriminals. He bragged publicly and privately about hacking U.S. and foreign telecommunications companies. Huseby Decl. ¶ 13. He developed an online persona to gain clout among cybercriminals. *Id*. Additionally, in communications with a co-conspirator, Wagenius agreed to "us[e] military resources" to "try to find out" whether certain stolen information belonged to the National Security Agency. *Id.* ¶ 12.

The conduct to which Wagenius has pleaded guilty caused harm to organizations, individuals, and the U.S. government. Wagenius repeatedly sought to access, and did access, telecommunications companies' networks specifically in order to obtain sensitive customer information, and used these stolen records as leverage when attempting to extort corporate victims, ultimately demanding over $1 million in ransom payments from these victims. Finally, Wagenius personally obtained approximately $1,500 from the sale of stolen victim data. *See* Huseby Decl. ¶ 9. He and his co-conspirators also used stolen victim data in further frauds targeting individuals, such as SIM-swapping. *See* Plea Agreement ¶ 10.b; PSR ¶¶ 23-24; Huseby Decl. ¶ 9.

It is difficult to assess the actual economic harm Wagenius caused to his corporate and individual victims, some of whom are located abroad and others of whom may be



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

unaware of the breaches or may have elected not to publicly acknowledge the breaches for fear of additional harm. Nonetheless, the government obtained letters from three corporate victims describing $294,978.38 in actual losses as a result of Wagenius's crimes, as follows:

| Victim Number (from CR25-142 LK) | Loss/Restitution |
|---|---|
| **Victim-2** | $76,135 |
| **Victim-3** | $187,200 |
| **Victim-4** | $31,643.38 |

PSR ¶¶ 38-40. Restitution is appropriate for the harms to each of these victims. One of Wagenius' co-conspirators, Kenneth Schuchman, pleaded guilty and accepted responsibility for the losses for Victim-2 and Victim-3. *See* CR26-5104 LK at Dkts. 29 (Minute Entry for Change of Plea) & 31 (Plea Agreement). Accordingly, any restitution ordered for the amounts owed to Victim 2 and Victim 3 should be made joint and several with Schuchman. Schuchman is scheduled to be sentenced by this Court in November 2026. *See id*.

Finally, although not addressed in charges against Wagenius, the government's investigation separately revealed that Wagenius unlawfully possessed thousands of stolen documents, including passports and driver's licenses. *See* PSR ¶ 22. The government is unaware whether the record owners suffered any harm as a result of this possession. *See* Huseby Decl. ¶ 14.

**B. Wagenius's Conduct Following the Execution of a Search Warrant and His Arrest**

On December 4, 2024, federal law enforcement executed search warrants at the Texas Army base where Wagenius was stationed and seized his electronic devices. *See*


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

PSR ¶ 19, Huseby Decl. ¶ 15. Two days later, Wagenius' commanding officer provided orders restricting Wagenius from "using or purchasing any technology such as laptops, tablets, cell phones, etc." *See* PSR ¶ 19, Huseby Decl. ¶ 16. Wagenius was advised that disregarding the order could lead to action under the Uniform Code of Military Justice. Huseby Decl. ¶ 16. Wagenius verbally acknowledged and confirmed that he understood the order. *See* PSR ¶ 19; Huseby Decl. ¶ 16. The next day, Wagenius violated the order by purchasing a new laptop and using it in the barracks. *See* PSR ¶ 19; Huseby Decl. ¶ 17. He continued to violate the order by using the laptop every day between December 8 and December 12—when it, and a corresponding purchase receipt dated December 7, were seized by the Army pursuant to an order by a military magistrate judge. *See* PSR ¶ 19; Huseby Decl. ¶ 17. Investigators found evidence that Wagenius immediately downloaded and used Proton VPN on the laptop, which is a tool that can be used to obfuscate an internet user's identity and/or location. *See* PSR ¶ 19; Huseby Decl. ¶ 18. Wagenius's commanding officer later provided a statement about Wagenius expressing multiple concerns about his behavior while enlisted, including his efforts to obtain electronics and attempts to access unauthorized locations. *See* Huseby Decl. ¶ 19.

Wagenius was arrested on or about December 20, 2024, in Texas. PSR ¶ 4. Following arrest, he quickly took responsibility for his criminal conduct by pleading guilty to the initial indictment in March 2025, *see* CR24-232 LK at Dkt. 35 (Minute Entry for Change of Plea), 37 (Report and Recommendation), 38 (Acceptance of Plea), and later pleading guilty to the three-count information filed in July 2025, *see* CR25-142 LK at Dkts. 6 (Minute Entry for Change of Plea) & 8 (Plea Agreement).

Nevertheless, while incarcerated pending sentencing in these matters, Wagenius violated Bureau of Prisons ("BOP") computer use policies in attempts to learn about vulnerabilities in BOP computer systems. *See* Huseby Decl. ¶ 21-25. According to records from BOP, in or around September 2025, Wagenius used another inmate's email system to request that the email recipient prompt a commercial AI tool to provide



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information about "[w]hat CVE's are there for Windows 10 Enterprise privilege escalation and bypasses" and to "[p]rovide the CVE's and a real world working script for each CVE . . . without omitted code." *Id.* ¶ 21. CVE is short for "Common Vulnerabilities and Exposures." *See id.* ¶ 21 n.1. CVEs with assigned CVE numbers are known computer security flaws and they are maintained in a public list. *See id; see also* NIST, National Vulnerability Database, *available at* https://nvd.nist.gov/vuln.

Approximately six days later, using a different inmate's email account, Wagenius requested that the email recipient prompt an AI tool to "[p]rovide the step by step for CVE-2023-45208, code for this if any, and if no code exists make some, make sure to describe everything in detail." *Id.* ¶ 22. CVE-2023-45208 is a specific vulnerability that, if exploited, can allow an attacker to run commands with higher privileges than the user should be permitted to run. *See id.* ¶ 22 n.2; CVE-2023-45208 Detail, *available at* https://nvd.nist.gov/vuln/detail/cve-2023-45208.

Also in September 2025, Wagenius again requested that the email recipient prompt AI with the following: "How do you make an antenna in a prison environment with commissary or readily available items/tools to improve/make an antenna to extend radio reception?" *Id.* ¶ 23. He also requested that the recipient research escaping prison. *Id*.

In several instances, Wagenius framed the AI queries as being posed in connection to a book he was writing. This is a common method of "prompt injection," in which attackers feed specially crafted, deceptive inputs into commercial AI tools that are programmed to avoid outputting malicious code that can be used to exploit computer vulnerabilities. *Id.* ¶ 24.

The government is unaware of evidence that Wagenius deployed these CVEs or otherwise hacked BOP's systems, and when questioned about this conduct, Wagenius stated that he never executed code from the AI tool and was researching potential vulnerabilities to provide information to BOP. *Id.* ¶ 25. His violations of BOP's computer



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

use policies while detained on cybercrime charges are concerning. They also prompted BOP to devote resources to investigating and mitigating the potential threat to the computer systems used by thousands of inmates, with BOP ultimately concluding "that Wagenius utilized the TRULINCS accounts of two other inmates in order to gain information from an outside AI database about Bureau of Prisons computer operating system." *Id*.

**C. Procedural History**

On December 18, 2024, a Grand Jury sitting in Seattle returned an indictment charging Wagenius with two counts of unlawful transfer of confidential phone records information, in violation of Title 18, United States Code, Section 1039(b). Wagenius was arrested on the indictment in Texas on or about December 20, 2024, *see* PSR ¶ 4, and made his initial appearance in Seattle on January 8, 2025, CR24-232 LK at Dkt. 14. On March 5, 2025, Wagenius pleaded guilty to both charged counts. *See* CR24-232 LK at Dkt. 35-38.

On or about July 15, 2025, Wagenius pleaded guilty to a three-count information charging him with wire fraud conspiracy, in violation of Title 18, United States Code, Section 1349, extortion in relation to computer fraud, in violation of Title 18, United States Code, Section 1030(a)(7)(B), and aggravated identity theft, in violation of Title 18, United States Code, Sections 1028A(a)(1) and 2. *See* CR25-142 LK at Dkt. 1, 6, & 8.

## II. SENTENCING GUIDELINES CALCULATIONS

**A. Offense Level**

As neither party offered objections to the sentencing calculations in the PSR, the parties appear to agree that the following sentencing guidelines apply. *See* PSR ¶¶ 44-60.

The government agrees with Probation that Counts 1 and 2 under Case No. CR24-232 LK and Counts 1 and 2 for Case No. CR25-142 LK should be grouped for guidelines calculation purposes, but for a different reason than discussed in PSR ¶ 45. These counts should group not because of losses but because they involve some of the same conduct.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

*See* USSG § 3D1.2(b)-(c). Specifically, the posts regarding call detail records of current or former government officials and/or their family members are charged in CR24-232 LK and are part of the wire fraud conspiracy charged in CR25-142 LK.

For these grouped counts, the base offense level is 7 as the wire fraud conspiracy charged in Count 1 of CR25-142 LK is the most serious offense. *See* PSR ¶ 46 & USSG § 3D1.3. Wagenius's extortion demands, including $500,000 demands of each of Victim-1 and Victim-4, and a demand of $200,000 from Victim-2, resulted in intended loss exceeding $550,000 but less than $1,500,000, resulting in a 14-level enhancement under USSG § 2B1.1(b)(1)(H).

Next, there are four two-level enhancements under USSG § 2B1.1. The offense involved 10 or more victims. *See* PSR ¶ 48, USSG § 2B1.1(b)(2)(A)(i). A substantial part of the scheme was committed outside the United States.[1] *See* PSR ¶ 49, USSG § 2B1.1(b)(10)(B). The offense involved trafficking in unauthorized access devices. *See* PSR ¶ 50, USSG § 2B1.1(b)(11)(B)(i). And the offense involved the unauthorized public dissemination of personal information. *See* PSR ¶ 51, USSG § 2B1.1(b)(18)(B).

Under USSG §3A1.2(a), a three-level enhancement is appropriate because victims included "a government officer or employee" as well as "a member of the immediate family of a person described in subdivision . . . (B)" and "the offense of conviction was motivated by such status." *See* PSR ¶ 52.

Finally, because Wagenius "used a special skill [] in a manner that significantly facilitated the commission [and] concealment of the offense," an additional two-level enhancement applies. *See* PSR ¶ 53, USSG § 3B1.3.

Wagenius meets the criteria for the Zero-Point Offender deduction, and he also accepted responsibility for his criminal conduct quickly, including by pleading guilty to

---

[1] There are numerous foreign victims, Wagenius was stationed in the Republic of Korea during some of his conduct, *see* Huseby Decl. ¶ 11, and multiple of his co-conspirators were located abroad, *see* Huseby Decl. ¶ 15.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the indictment in Case No. CR24-232 LK even before receiving a plea offer from the government. *See* PSR ¶¶ 56-58, USSG §§ 3E1.1(a) and (b); 4C1.1(a) and (b).

Count 3 of CR25-142 LK requires a mandatory term of 24 months' imprisonment, to run consecutive to the sentences for other counts. *See* PSR ¶ 108.

**B. Criminal History Category**

Wagenius's criminal history score is zero and his Criminal History Category is I. *See* PSR ¶ 63.

**C. Guidelines Range**

For the grouped counts, Wagenius's offense level is 29 and his corresponding guidelines sentencing range is 87 to 108 months. *See* PSR ¶ 109. For Count 3 of CR25-142 LK, his guidelines sentencing range is 24 months of imprisonment, which is a mandatory sentence that must run consecutive to any other sentence. *See* PSR ¶ 108. Therefore, the total guideline imprisonment range for all counts is 111 to 132 months of imprisonment.

## III. FACTORS RELATED TO SENTENCING RECOMMENDATION

The United States respectfully requests a below-guidelines sentence of 70 months' imprisonment, a three-year term of supervised release, and $294,978.38 in restitution. This sentence appropriately balances the factors set forth in 18 U.S.C. § 3553(a).

**A. Nature, Circumstances, and Seriousness of the Offenses**

Wagenius's offenses were extremely serious. For over 18 months and while employed as a soldier in the U.S. Army holding a security clearance, Wagenius participated in a financially motivated wire fraud conspiracy. Working with co-conspirators, he helped develop a hacking tool that they used to access at least 10 victim companies' computer networks without authorization. Wagenius and his co-conspirators stole extremely sensitive personal identifying information from these computer networks, sold and publicly disclosed the stolen information—including on online cybercrime forums—and used the information to privately and publicly extort victim companies. In


UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

these efforts, Wagenius targeted telecommunications companies and other corporations that hold sensitive data about their customers, in an attempt to gain leverage and obtain ransom payments.

The targeting of telecommunications companies and call detail records further heightens the seriousness of his offenses. Because they are particularly susceptible to criminal misuse, call detail records are specifically protected by 18 U.S.C. § 1039. As the House Judiciary Committee wrote in its report:

> By scrutinizing the records of whom one chooses to call and for how long one converses, criminals and unscrupulous individuals can obtain a great deal of useful and potentially sensitive personal information. A careful examination of these records can reveal much about a person's business and personal relationships, including details that may involve their medical, financial, professional, or family life. In some instances, calling records may even be used to identify the physical location of the caller.

H.R. Rep. No. 109-395, 3 (2006). Wagenius took particular advantage of these opportunities for criminal misuse in his hacking and extortion efforts.

His actions also displayed a striking disregard for the safety and security of the United States. He told a co-conspirator that he would use military resources to determine whether certain stolen information belonged to the National Security Agency. He published sensitive records relating to a U.S. government official and members of another former U.S. government official's family, and he threatened further leaks if the victim company failed to pay his ransom demands.

He also attempted to sell stolen information about a foreign nation to what he believed was a second foreign nation's intelligence service. Through multiple encrypted messages, he emphasized how the stolen material could be used to locate or target officials of that foreign nation. By highlighting that the data could help a foreign military intelligence service "find high ranking government, military officials," he demonstrated a clear understanding of the sensitivity and potential impact of the information. He



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

recognized that such data, when combined with other information, could enable the targeting of high-value government and military figures. And he understood that the foreign intelligence service he sought to assist could exploit such information to inflict substantial harm, particularly given current technological capabilities, including drones designed to remotely identify and strike military and civilian assets. In doing so, Wagenius showed a willingness to take unsanctioned actions that risked upsetting U.S. foreign relations.

Ultimately, Wagenius recognized the value of stolen information and sought to profit financially from it, regardless of whether the victim was a company, an individual, a public figure, or a government, and regardless of the consequences to those harmed. His criminal activities also appear motivated by a desire to achieve status within criminal hacking communities. He actively participated in cybercrime focused channels on Telegram and on cybercrime forums, and he publicly and privately bragged about hacking U.S. and foreign telecommunication companies. In at least one instance, Wagenius's online posts also made it clear that his criminal conduct was motivated by a desire to retaliate for the arrest of another cybercriminal.

Finally, even after he was caught, Wagenius continued to violate explicit military orders and BOP rules related to computer access.

Wagenius appears to have only profited by about $1,500 from his cybercriminal activities. But his conduct was both intended to and did cause substantial financial harm, including actual loss of $294,978.38 and intended loss of $1.2 million to a small handful of victims. Wagenius admitted to conspiring to defraud at least 10 victim organizations and to conduct that would have reasonably harmed numerous individuals whose sensitive information was compromised. For example, Wagenius admitted that he and co-conspirators sold some victim data and used it in further frauds targeting individuals, such as SIM-swapping. *See* Plea Agreement ¶ 10.b. Accordingly, the plea agreement and PSR may not account for all harms from Wagenius's conduct.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

### B. History and Characteristics of the Defendant

Wagenius may attempt to excuse his 18 months of criminal conduct—committed from age 19 to 20—as products of youth and poor judgment. However, neither his personal background nor his youth justify his crimes. Although there appear to have been some concerning incidents when he was very young, Wagenius was raised in a relatively stable home and comfortable upbringing. *See* PSR ¶¶ 69-77 and Dkt. 53 at 6 (Wagenius' letters of support). He would also likely have had educational opportunities in both high school and the Army. *See* PSR ¶¶ 95-98. Rather than taking advantage of opportunities arising from his military service, shortly after swearing his Oath of Enlistment, Wagenius began an 18-month cybercrime campaign from his barracks, which almost certainly would have continued had he not been caught. Upon being searched, he immediately violated his commanding officer's command to stay off electronic devices, purchasing a laptop and using a VPN to access the internet. Even while detained on these charges, he probed BOP's computer systems for vulnerabilities. Despite many opportunities, Wagenius has repeatedly demonstrated a disregard for the privacy and security of others, and a belief that rules do not apply to him.

### C. Need to Promote Respect for the Law, Provide Just Punishment, and Adequately Deter

Both specific and general deterrence are important considerations in arriving at a just outcome in this case. Due to the widespread nature of Wagenius's conduct and the resulting harms, the sentence in this matter must adequately deter Wagenius and promote respect for the rule of law.

As addressed above, Wagenius engaged in a long spree of criminal conduct and has repeatedly shown disregard for the privacy and security of others, the rules of the military, and the law. He must face real consequences to deter him in the future.

General deterrence is also a relevant consideration. Rapidly changing technology, driven by improvements in artificial intelligence, has led to a troubling cybercrime trend



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

in which many more young people, of varying technical abilities, can engage in large-scale computer intrusions. *See* Tom Uren, *The Kids Aren't Alright* (Sept. 25, 2025), *available at* https://news.risky.biz/the-kids-arent-alright (comparing the teen developers of the Mirai botnet in the mid-2010s, who eventually were hired in the cybersecurity industry, to a non-technical 20-year-old who became involved in SIM-swapping at age 15, stole $13 million in cryptocurrency, and was sentenced to 10 years in federal prison in 2025, and concluding that "[m]ore aggressive and rapid law enforcement is part of the solution"). Now, anyone with access to Telegram and a commercial AI tool can create sophisticated computer programs that cause serious harm to others through the theft of sensitive data, which can be used for SIM swapping, phishing, and other financially destructive crimes. Because Wagenius was able to enhance the effectiveness of his hacking capabilities through reliance on such technologies and with the assistance of co-conspirators, *see* CR25-142 LK, Dkt. No. 1, ¶ 2; PSR ¶ 24, he presents an opportunity for general deterrence of others with like goals.

The choice to engage in sophisticated hacking conduct is a calculated decision and therefore particularly well suited to general deterrence. *See United States v. Thompson*, 130 F.4th 1158, 1167 (9th Cir. 2025) ("[T]here are some people out there who are looking at the cost-benefit analysis and saying . . . if I can get away with credit for time served of 100 days, with the possibility of making a couple hundred million dollars with this, I'm going to take the chance."); *see also United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence.") (internal quotation marks and alteration omitted). Wagenius was motivated by greed and the desire to control an online persona respected by other criminals. Other potential criminals must know that the money, reputation, or the thrill of hacking and extorting U.S. companies is not worth it.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The difficulty of identifying and apprehending cybercriminals further increases the need for real consequences. Hacking schemes today involve anonymity-enhancing technology such as virtual private networks (used by Wagenius) and anonymity-enhanced cryptocurrency. The result is that many crimes go unsolved and therefore unpunished. Without a real possibility of imprisonment, there is little incentive for those considering hacking to resist. *See United States v. Engle*, 592 F.3d 495, 502 (4th Cir. 2010) (explaining that because tax evasion offenses are infrequently prosecuted, "[w]ithout a real possibility of imprisonment, there would be little incentive for a wavering would-be evader to choose the straight-and-narrow over the wayward path); *United States v. Heffernan*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); *United States v. Fitzpatrick*, 126 F.4th 348, 354 (4th Cir. 2025) ("[A] 17-day sentence for the commission of three serious felonies [including the largest English-language data-breach forum ever] signals to would-be criminals that they might get one free pass before facing any serious penalties.").

The public's interest in deterring cybercrime is difficult to overstate. The Internet Crime Complaint Center ("IC3"), the FBI unit that receives and tracks cybercrime complaints from victims, received a total of 86,415 complaints of extortion in 2024, with reported losses of over $143 million.[2] These figures highlight that cyber extortion schemes impose a tremendous cost *beyond the cost of any ransom paid* because victims must expend considerable resources to identify the full scope of the breach and fix any vulnerabilities, ensure the protection of sensitive data, notify clients, and, in certain cases, report and respond to federal and state regulatory agencies in the aftermath of a breach.

---

[2] FEDERAL BUREAU OF INVESTIGATION, INTERNET CRIME REPORT 2024 at 9, https://www.ic3.gov/AnnualReport/Reports/2024_IC3Report.pdf.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The sentencing recommendation of the government considers the need for specific and general deterrence.

**D. Need to Protect the Public from Additional Crimes**

Since becoming an adult, the only job Wagenius has ever held was with the U.S. Army. Wagenius was active in the cybercriminal community during nearly his entire time in the Army. The government's recommendation of 70 months' imprisonment will provide a respite during which Wagenius cannot easily commit additional crimes; it will also afford him the opportunity to consider how he wants to spend his life and what legitimate careers he could pursue.

**E. Need to Avoid Unwarranted Sentencing Disparities**

The government's recommendation of 70 months would be reasonable in light of other sentences in this district and elsewhere and would not create unwarranted disparities.

Within this district, recent hacking cases motivated by financial profits include the FIN7 prosecution, which involved three defendants who had worked with over 70 other co-conspirators in an international conspiracy to breach over 100 companies and steal over 20 million customer credit and debit card numbers, which they sold for profit. *See* Gov. Sentencing Mem., *United States v. Hladyr*, No. 2:17-cr-00276-RSM, ECF No. 85 (W.D. Wash. Apr. 9, 2021); Gov. Sentencing Mem., *United States v. Kolpakov*, No. 2:18-cr-00159-RSM, ECF No. 59 (W.D. Wash. June 17, 2021); Gov. Sentencing Mem., *United States v. Iarmak*, No. 2:19-cr-00257-RSM, ECF No. 54 (W.D. Wash. March 29, 2022). The losses to victims were over $100 million. None of the three defendants was among the top-level leaders of the conspiracy, although two were managers. The three defendants, who qualified for departures from their sentencing guidelines imprisonment ranges, received sentences of ten years, seven years, and five years in prison.

Another relevant case in this district is *United States v. Raoult*, No. CR21-109 RSL. In that case Sebastien Raoult was sentenced to 36 months in prison for his role in an



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

international hacking conspiracy involving phishing emails. *See* No. CR21-109 RSL at Dkt. 61. Raoult and his co-conspirators stole information from victim companies, demanded ransoms, and caused over $5 million in losses to corporate victims. *See* Gov. Sentencing Mem., Dkt. 59, at 2. Raoult and his conspirators also used stolen credentials throughout their scheme in order to further their crimes. *Id.* at 3.

Additionally, according to national data provided by Probation for defendants facing similar guidelines, "after excluding defendants who received a § 5K1.1 substantial assistance departure," the "average length of imprisonment imposed was 98 month(s) and the median length of imprisonment imposed was 102 month(s)." *See* PSR Addendum.

Here, a 70-month sentence would not create sentencing disparities considering all of the factors present in this case. Wagenius was an active-duty soldier who not only engaged in financially motivated hacking but also attempted to sell sensitive stolen data to a foreign intelligence service while serving in the U.S. Army, retaliated for the arrest of another cybercriminal, leaked confidential phone records belonging to a government official and family members of another former official, and researched vulnerabilities about BOP computer systems while detained in this case.

///

///



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## IV. CONCLUSION

Based on all the information before the Court, the United States respectfully requests that this Court impose a custodial sentence of 70 months followed by three years of supervised release, to include electronic device monitoring; order restitution in the amount of $294,978.38; and impose a mandatory special assessment of $500. This sentence would address the harms Wagenius caused, protect the public from further harm, and deter others from engaging in cybercriminal activities.

DATED this 18th day of September, 2026.

Respectfully submitted,

*/s/Sok Tea Jiang*
SOK TEA JIANG
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970
sok.jiang@usdoj.gov

*/s/Louisa K. Becker*
*/s/George S. Brown*
LOUISA K. BECKER, Senior Counsel
GEORGE S. BROWN, Trial Attorney
Computer Crime & Intellectual Property Section
U.S. Department of Justice
1301 New York Ave NW
Washington, D.C. 20530
(202) 514-3597
louisa.marion@usdoj.gov
george.brown@usdoj.gov